All right. Hear ye, hear ye, hear ye. This honorable Appellate Court of the 2nd District is now open for suing to adjournment. The Honorable Susan Faye Hutchinson presiding. Please be seated. In honor of the first case of the morning's trial, 2-12-11-56, the people of the state of Illinois v. Marley Downs. On behalf of the appellant, Mr. Bruce Kirkland. On behalf of the athlete, Ms. Joan Kripke. Good morning everyone and Mr. Kirkland, when you're ready. May it please the court and the counsel. Good morning, your honors. My name is Bruce Kirkland and I'm here today on behalf of the defendant, Mr. Mark Downs. I'd like to begin my argument this morning by addressing Issue 1 that I raised in the defendant's brief and that is the definition of reasonable doubt. Can you first address the state's forfeiture argument? Why this argument is not forfeited? I acknowledge in my brief, your honor, that this could have been raised in first direct appeal to this court. It was not raised. Forfeiture is a limitation on this court. I believe that it is within the discretion of this court to consider this issue if it wishes to do so. The cases that we rely on on this issue have found that the error complained of is structural error that goes into integrity of the judicial system. It's a good time to address this issue. Mr. Downs has not filed a post conviction petition. He has the argument of ineffective assistance of the appellate counsel if he wishes to raise this issue. If you say it's forfeited, he will raise it in another forum. That's why I raise it now to give this court the opportunity to deal with this case or deal with this issue right now. And alternatively, if we were to reverse the trial court for an improper cranking, this issue could be raised again below. Yes. Yes. And if you reverse the trial, cranking would not be necessary, obviously. Your Honor, regarding the reasonable doubt issue, in the case of Donnell Terman during the jury's deliberations in that case in the Cook County Circuit Court, the jury sent a note to the court asking for a more explicit, expansive definition of reasonable doubt. The court responded, reasonable doubt is not defined under Illinois law. It's for the jury to collectively determine what reasonable doubt is. And that was found to be structural error, reversible error. In the case before us today, during Mr. Downs' jury's deliberations, they sent a note to the trial court asking, what is your definition of reasonable doubt? 80 percent? 70 percent? 60 percent? And the court answered, we cannot give you a definition. It is your duty to define. Those two answers from the trial courts in Terman and Downs are similar enough that the same outcome is required as in Terman, a finding that the answer constituted an improper instruction, an improper definition to the jury of the meaning of reasonable doubt. Illinois has- In the Terman case, they didn't actually ascribe percentages to their question, did they? They just said, what is reasonable doubt? That is correct. Is there some significance or something maybe that is troubling you about the percentages? Well, clearly the percentages are troubling when they are trying to put a number and a percentage on this question of how much doubt is reasonable. And when they go as low as 60 percent, we're perilously close, and it's an unacceptably close to 50 percent plus an iota of preponderance of the evidence. Yeah, the question is very troublesome. But the error is in the court's response. Wasn't there also a series of questions from the jurors requesting transcripts, and they wanted testimony? Did the court answer that it would take several hours to get those to you? I haven't reviewed the other jury questions, but I do believe I recall that this was the fifth jury question that the jury did have in this case, and they did involve- And it was after this question that they came back shortly thereafter with a guilty vote. That is correct. That is correct. They never got those other transcripts that they had asked for, correct? My understanding and recollection is they did not. They chose to proceed and send out this question and continue their deliberations. So even if Thurman and Franklin were wrong in deciding it was just a state's theory, you would argue that this case is different because that percentage indicated the jury was already down the wrong path, correct? They were down the wrong path. Well, what would have been the appropriate response to the question then? The appropriate response would have been you have received the instructions of law in this case. Please continue your deliberations. And then we'd have an argument on appeal that the jury was already down the wrong path because of the percentage question that they sent out, correct? Well- Wasn't the trial court duty-bound to correct the jury's perception that they could quantify reasonable doubt? Didn't he have to do something? No. I think that the proper response under Illinois' common law that we followed for the last hundred years and the directives of the Supreme Court is you cannot define it. We trust our juries to consider the facts, make findings of facts, and determine whether those facts result, whether they can find the guilt beyond a reasonable doubt. Who knows what goes on in jury rooms? We don't impeach jurors with their own verdicts. The problem is when the court interjects and tries to steer that. When the court uses even the subtle hand to point the jury in a different direction. Well, if the court's answer points them in the right direction, which is reminding the jury that reasonable doubt is incapable of easy explication, it's the highest standard of proof known to law, wouldn't that have been an appropriate response? I would argue no. It's not.  Well, it is. It is. I'm sorry. I was interested in that question. If you tell them that, though, you have interjected the court into the province of the jury, and the courts in Illinois are required to stay out of that. And the problem, I think, let me answer it this way and make this point, that when you compare the answers in Terman and Downs, they're not identical. They're not the same answer, even though they try to convey essentially the same point. The jury, you figure it out, but they're different. In Terman, the court says it is for you to collectively decide. Okay, that's an instruction. That's a definition of reasonable doubt, which says you all get together and arrive at one definition of reasonable doubt. In this case, we cannot give you a definition. It is your duty to define it. Who is you? Is you each individual juror arrives at their own definition of reasonable doubt? Are they to collectively determine what is reasonable doubt? Those are two different answers to essentially the same question. And that's the problem when we allow trial courts to sort of ad lib answers to these jury questions on reasonable doubt. And that's why the only proper and correct answer under our decades of Supreme Court rulings and jurisprudence is to say you've received the instructions, please continue to deliberate. By letting trial courts answer these questions in even slightly different ways, we're setting up a system where you have different standards of reasonable doubt explained to the jury in different trials. And that is not acceptable under Illinois' system of not defining reasonable doubt for jurors. So you don't think the judge should have, in any fashion, addressed the percentage portion of that question? Because you're talking, if you get to 50%, that's a whole different burden, 51%. Right. Well, look, if I can answer it this way, the court said you decide. In other words, pick a number. And the standard for finding a jury definition or instruction to be error is a reasonable likelihood that the jury understood the instruction to allow a conviction based on less proof than beyond a reasonable doubt. Then you've met that standard in this case where the jury has already indicated to you that they're perilously close to preponderance of the evidence. And you tell them you decide. Then you've endorsed their misconceptions and their struggles to arrive at a definition. Well, but then back to Justice Burkett's question. Since they have asked this question based upon percentages, or that's one of the elements, doesn't the trial judge have an obligation to get that, you know, take that out of their wheelhouse? Shouldn't he or she say it is not a matter of percentages? Or as the Terman court said, it is not any doubt but only that doubt which is reasonable. That's what they suggest might be an appropriate answer. Does the trial judge have that obligation as the person presiding over the law of this case? Certainly we want that to be the case, and I want to stand here and say yes. Tell them that it's closer to 80%. But why do we even let them talk about numbers? Why don't we say it is not a matter of percentages? Because that is a definition of reasonable doubt. That is an attempt to define that which shall not be defined. Well, the United States Supreme Court said in Victor v. Nebraska that the standard is a very high level of probability. It's a very high level of probability that's required by the Constitution. So the court is, you know, when you're talking percentages, isn't that what the Supreme Court is talking about in Victor v. Nebraska? A very high level of probability, but we shouldn't be talking about percentages. We should be talking about we should be convinced to near certitude in words of that effect. Right. Not some 60, 70, 80%. I mean, how do you—I'm thinking of what is it in the next case that comes along that doesn't involve percentages, and there's some indication that the jury is somehow on the wrong path or very toward a preponderance standard. I mean, do you just make up, Mr. Trautberg, to answer it as best as you can? I think the danger is, as I explained earlier or proffered earlier, that the danger is that we get this system of individual juries being told different things based on whatever misconception they may have or whatever mistakes they're making. Regardless of how we decide this case, would this case be an appropriate disposition regardless of how we decide it for a certificate of importance to the Supreme Court because of the importance of this issue? I know that they declined to take the petition from you to appeal and determine. You know, I certainly would welcome a Supreme Court review of this. I know that in People v. Thaler, that's getting to be an old case now from 1995, there was an answer that was in this category of it is your duty to decide it there. It's up to you to determine, I think, was the answer that was given there. Okay. I forget the exact wording. The defense there on the appellant there argued that the court should have answered the question. The court should have gone farther. The court, we should be defining a reasonable doubt for juries. And the Fourth District said no, we should, and the Supreme Court says we don't define reasonable doubt for juries. And the Supreme Court, again, didn't take advantage of the opportunity or the invitation by the appellant in that case to change our system of rule of no definitions of reasonable doubt to the jury. So that avenue has been explored and rejected. Well, there's a difference between defining it to the jury and answering a question where the jury is trying to define it themselves but doing so erroneously. I mean, isn't there a distinction we can draw there? You know, it's hard. And it's a common thing. This is not an unusual issue. You know, it happens all the time. Exactly. You know, anything you respond other than no response is a definition. I don't know how we can. But in the Turman case, which was not, as you indicated, taken by the Supreme Court, the Turman case actually suggests what they call a circular definition, or it's reasonable doubt is not any doubt but only that doubt which is reasonable. Isn't that a definition? It is a definition. So the Turman court said that the answer given was wrong. They suggest this is a possibly better answer, and the Supreme Court doesn't act on it. Well, yeah, and the potentially better answer was the one that was suggested by defense counsel at trial as a proposed answer to the question, I believe, and I don't know how much weight to give that to say the court says, well, even that would have been better. I don't know if we can say that means that that was a preferred or would have been found to have been appropriate had they given that answer. I would argue that it wouldn't be because the Supreme Court says we can't define it, and that's a definition. We can't go there. That's the province of the jury. We have to respect that and stay out of that. We can't have the court steering that in any way. Even though it appears, and in the other cases they say letting them make this decision collectively gives them the opportunity to use less than an appropriate standard generally. Here we know that that's what they're thinking about by their question. So is there a difference between, and I think this is Justice Fenton's question, is there a difference between a definition and a judge's role to make sure the law is properly applied? How do you answer that question? Just simply say it's not a matter of percentages. I'm not saying that's the answer. I'm just saying do you have an obligation? We'll get to what that obligation might be. Right, right. I think the obligation is to not define. That's what the Supreme Court has said. That's the issue that we can't be defining. But from the jury question, just from the question, doesn't the question alone, even if the court doesn't answer the question, doesn't the question lead to a likelihood that the jury understood that reasonable doubt was less than required by Winship? Yeah. Didn't the question indicate that? So, I mean, it's either a mistrial or the court has to do something. So what does the court do? Well, the court has to follow the Supreme Court and not answer. I would love to stand here and say the error in this case was that the jury was not told don't go with 60 percent. But that's contradictory to what the Illinois Supreme Court jurisprudence is. It says don't define it at all. And that's what Truman found. And that's the same situation. What about saying it's not preponderance, it's not clear and convincing, it's proof beyond a reasonable doubt, the highest standard of proof known to law. Would that have been appropriate? Because when they're talking 60 percent, they're talking just barely over preponderance. Correct. And I am extremely troubled by the question. Yeah, the 60 percent is very troubling. I mean, that's not enough. You know, it is the highest standard. And that's one of the problems with our system. That's one of the problems with this. We're one of the minority of states that does not permit defining reasonable doubt. You know, if the Supreme Court wants to define reasonable doubt, then I'm sure they will find a vast body of scholarly work that will help them determine what the standard is if they want to define it. But they haven't chosen and determined not to go there. And that's where we're at today, living with the role of the Supreme Court. And that was violated in this case. And according to Turner, in a similar case, it's structural error and requires reversal for a new trial. Thank you. You'll have an opportunity to pour over a bottle. Ms. Kripke? Jean Kripke, on behalf of the people of the State of Illinois Council. I do think that this issue has been forfeited and forfeited many times over. If the defendant had raised this issue, not in his initial brief, but in his initial reply brief, there would have been no doubt that this court, I think that there would have been no doubt that this court would have said, no, you can't add an issue at this point. Issues have to, you have to get your issues together. What point are we at? Well, I think we are on appeal after a limited remand from this court. And my concern is this, is that if you... Yeah, and the other aspects of this appeal, an improper crankle hearing, and we send it back, then we're still back at the post-trial motion stage, correct? Yes. If we agree that this issue is forfeited and we were to say that now there is an issue that should have been raised or defense counsel should have addressed the five issues that he originally said I would address but now said I decline to address. So what's the justification for not considering this issue now? Well, Hackey raised it on direct appeal. I mean, forget about that. Well, but that's exactly... What's the justification in the interest of justice and judicial economy? This issue is going to be raised. You know that. We all know that. Well, then why don't we have procedural rules? Why don't we just allow... Forfeiture does not bind us. No, it doesn't. But you also don't have supervisory authority. And so this case went down on a limited remand. The trial court was bound by your mandate. It couldn't go... And that was discussed in the Corey Moore case on remand from the Supreme Court. What can be raised at this point? And they never got there because Mr. Kling never raised additional issues. However, the language in those cases is very clear. They say you are given a mandate, you the trial court, and you can't start going off into other avenues. You can't start answering other questions that may pop up. So if you expect the trial courts to follow your mandate when you send something back, I hate to put it in this term, but what kind of example are you setting if you say, oh, we're not going to listen. You can't do it, but we can do whatever the heck we want on appeal because it's more expeditious. Why isn't it more expeditious for them to go and freelance and add other issues? Just because you said they couldn't. But what you're basically saying is we're going to now disregard our own mandate and act as if we have supervisory authority to look at whatever the heck we want to look at because it seems convenient. How are we ignoring our own mandate? Because you would be ignoring your own mandate because the mandate to the court was to do X. They did X. What you're allowed to look at now are issues pertaining to whether or not X was done correctly or not correctly. No, we didn't rule on the other ones before because we wanted X to be resolved and now all the issues are properly before us. Why can't we look at it? But that issue was not properly before you ever. It is now, or it may be now. But it's only if you can show that there's, only if you can agree that there's plain error. It's structural error. Okay, so if you think that it's structurally, if you think that the response was error. What argument do you have that it's not in light of the Supreme Court precedent that this claim is structural error? What argument do you have to say that it is not structural error? No, I'm not disagreeing. What I'm saying is if it's indeed error. That's the question. And the issue of, well, let's just forego PC, you know, we know it's going to come up. Well, but that's why we have PC. And there is nothing that doesn't, that says that the defendant is saying, I promise, cross my heart and hope to die, that I still won't file a PC. He can still come up on PC, but he's trying to jump the line with this particular issue. Well, there's such a thing as judicial economy. I mean, I have joked up here that, you know, some of these issues keep coming back and it's job security. That's a joke. Judicial economy is not. Judicial efficiency is not. And judicial recognition of due process issues also is not a joke. So you're saying we should just disregard what the Supreme Court and two of our colleague courts have said recently about this issue and say, ah, he can take it up on PC. First of all, it's not just saying, oh, you're acting as if this case came, this issue came up on the initial direct appeal. It hasn't. First of all, what would happen, you have to look at what happened. The initial direct appeal. Initial brief on direct appeal. I'm sorry, we're still on direct appeal. Control your arguments and listen to my question. The initial issue was whether or not there was a proper crankle hearing, correct? That's what we decided there was not, correct? And there were two other issues that were raised that you did not, that you held in abeyance and sent it all back. Correct. And then we sent it back. Right. And then now there's another crankle hearing. So this is really still the first appeal from the denial of a post-trial motion. It's, that's, when you look at it, that's really what it is. Technically. That's really what it is. Technically, yes, but it was, but it was on limited. Let me move on to the merits of the argument, why this is not structural error. Because you gave an order from this court, and you gave a mandate, and you said this is going back on limited remand for you to do X, only X. And therefore, that issue never was raised. Maybe, maybe crankle counsel in this go-around, Mr. Haskell, could have looked around and said, oh, you know, I think that this also comes in under the ineffectiveness aegis, and he could have submitted it to the court at that point. But he didn't. So that's why. I think you're making my point. Can you get to the argument as to why this is not reversible error, assuming we consider the issue not forfeited? Because Mr. Haskell. Are you going to argue the merits on the question as to whether or not the court's answer to the question amounted to structural error? Yes, but I don't think Mr. Haskell can be deemed ineffective for not having raised the issue. Because he was not under any obligation. Your mandate to him was to look at the issues that had been presented, and in that person's discretion, submit those issues to the court to be evaluated. And in his discretion, he went over all the issues again and said, you know, I don't think they hold water, and this is why. He wrote a paragraph about each one. All right, then you won't have to rewrite your brief when he brings his PC, because you've argued that now. Let's talk about this issue. Okay, let's talk about this issue. So I don't think, I agree with Mr. Kirkham, I don't think the court could have said, well, you're not allowed to quantify it. Because that's a definition. I think what we need to do is look at the dissent in Franklin and the Johnson case. And then if you shepherdize those, there's a couple of Rule 23s that actually follow those lines of thought. And in those cases, what they stress, and also Victor V. Nebraska points out, is you have to look at the jury instructions as a whole. And what was interesting about the dissent in Franklin is the judge went through all the standard instructions that are given to the jurors throughout the trial. The jurors were told repeatedly, this is what you have to look at. This is who's got the burden of proof. The defendant is considered innocent. The questions that were, the zero questions that were asked about their own opinions on all of this. And then you get to, this is how the jurors should sit down and look at reasonable doubt. Now, I get the cases mixed up, but there was the one case, I can't remember if it happened again in Johnson, it was the same judge, who went through and said, well, if any of you have been on a civil jury, preponderance is down here, and reasonable doubt is up here. And he did like a balancing motion with his hands. In answer to your question, Justice Burkett, to say, well, there's preponderance, there's clear and convincing, and there's reasonable doubt. I don't personally think that's a great idea because I'm not even sure what clear, no one's ever been able to tell me what clear and convincing is. I think that's even more confusing than reasonable doubt. So now you've got three definitions out there to confuse the jury. And so I don't think that this was structural error because the judge said, it's yours to define, and that is correct. Somebody's got to define reasonable doubt. It just can't be the court, and it cannot be the attorneys. Well, the United States Supreme Court has said that reasonable doubt defies easy explication, that it's almost impossible, essentially, to define. And they also said in the case that you asked us to consider, Victor v. Nebraska, that it has to be near certitude, near certitude, and a very high probability. Does 60% meet those standards? But you, I don't know. Well, look, that's the point. We don't know either, and the question before us is whether or not there's a reasonable likelihood based upon the way the jury may have misunderstood the court's instruction to allow conviction on less than proof beyond a reasonable doubt. But I do not agree that, but you don't. You do not agree that there is a, based on that, there may be a reasonable likelihood that they convicted on less than proof beyond a reasonable doubt? I don't think you know. Why is that? I don't think you know, because you don't know if the jurors aren't back there flipping coins most of the time on each guilty count. You don't know. They just happen to have put this in there. We don't know what's going on in the jury. What if we did find out they were flipping coins? Then you've got a different problem. I mean, because then they're not following the instructions. Okay, so then if they're asking a question that indicates... If they come back and say, can we flip coins, then we've got a different issue going on. But the issue, the whole point, though, is they have a series of instructions. If they're flipping a coin, they're not following the instructions. Correct. If they're asking a question, what is reasonable doubt, why don't we simply say you have been instructed in the law, review the instructions? Because it's the same basic problem. They're not either reading, understanding, or in your mind with the flipping a coin, following the instructions. In Turman, the court speculated completely that the jurors had collectively gotten together and come up with a definition. Because that's what they were told to do by the judge. Well, they were... Well, who knows? But they speculated... That's what they were told to do. But we don't know if they did it, but let's presume... But the thing is, is how do we know that they came up with a lesser standard of proof? That's what bothered me in particular about Turman, was that they said, well, and how do we know that they're not going to come back with a lesser standard of proof? Well, how do we ever know? And you still don't know here. And maybe the way the evidence... You don't have to know. We have to know that there is a likelihood or a reasonable likelihood that the jury may have, not did, may have found the defendant guilty on less than proof beyond a reasonable doubt. You keep confusing the standard that we don't know. We don't have to know. What we have to decide is whether or not the question that was answered by the court, which amounts to an instruction, read the question and the answer together, whether that raised the likelihood that the jury may have decided guilt on less than proof beyond a reasonable doubt, the Winship standard. It may have, but it may not have. If it may have, that requires reversal. Ms. Kripke, that is the law. If it may have, it requires reversal. But they asked that question before they got the other instruction. So we don't know. And what's to say that 60%, your 60% is not their 60%? I don't know what 60% even means. But for the court, the court was... 60% is clearly not near certitude or, in the language of the court in Victor v. Nebraska, a very high probability. It's 80%? What's a high probability? The question is whether or not there was a risk that the jury understood that they could convict on less than a standard required by due process, which is proof beyond a reasonable doubt. And the court came back and said, there's no definition of reasonable doubt. You must define it. And what Victor v. Nebraska says and the other cases said and Franklin's dissent says is that, and Johnson says, you must, the jurors must look at all of the instructions together. And they were instructed that way, that all the instructions together, you have to presume that they're looking at all the instructions together. And they were repeatedly told who bore the burden and what was, and all the other issues, the other 18 elements that, or instructions that were brought up by the dissent in Franklin. All right, Justice Carter wrote the dissent in Franklin. And he's very concerned about the, well, he didn't say it this way, but I will, the chattiness of the trial court judge during jury selection, during, throughout the trial. And he says that it has to be considered as a whole, but he said it is not unlikely the jury didn't understand because the trial court made some remarks that he should not have done. The prosecutor in closing arguments reminded the jury of those remarks. And ultimately, I think his dissent in Franklin is about the trial judge should refrain from making such comments. As well as he's encouraging, although the Supreme Court apparently didn't take the encouragement, a new look at should we allow a definition. And neither one of, I mean, I think that's what Franklin's dissent is about. It's not about whether this is a structural error. He is looking at this trial judge, this case, and the problem raised by the trial judge before we even got out of the box. But also part of what he said about, about Turman was he said, I don't, I don't have enough facts to know what went on in Turman and how the, and what the court said in Turman. And in regard to the prosecutor making a comment and reminding them, that's because the defense, he did that in rebuttal. The defense counsel was saying he, there was no reasonable doubt here. Again, it's a party sort of telling the jury there was no reasonable doubt. Borderline, it could be interpreted as if they're saying, they're almost defining it. So maybe nobody had clean hands in that entire case. Maybe there was, there were problems throughout the entire way everybody was speaking in it, both the prosecutor, defense attorney, and the court. I think that, I think, however, and when you talk about, well, if we send this back for yet another crankled hearing. Clearly, my question is, it sounds like that there is a certainty coming from the court. I don't think that there was anything wrong that went on with the crankled hearing in this particular case. You gave a mandate. The lawyer followed it. And the lawyer said very specifically, Mr. Haskell said, I can't in good faith bring these issues. I went over them again. He wrote out a paragraph for all 51 or 52 of the defendant's issues. And he said, I looked at them all again. I looked at the transcripts all over again and saw what was said. He said, I can't bring these issues before you. That's what you sent this back down for. And so at that time, I just don't, I don't think there's anything to remand yet again. And I also do not think that this issue is properly before the court at this time for the reason that it isn't a matter of judicial economy. Because then you have to, then you're picking and choosing when among the different issues and when a limited remand is really a limited remand. And then there becomes no guidelines. That might be true if Terman and Franklin did not occur during this period of time and almost after that remand. Because we're at about 2012. Terman comes out late in 2011. Franklin's 2012. We're in 2014. This case started in 2013. All of these cases are before the court. So we should just disregard the cases and not even consider them. You know what, you do know what supervisory means. I'm sure that if we did not consider them, we would have a supervisory order from the Supreme Court ordering us to consider this issue. Here's another concern. This is an old case. A very old case. Right. Do you think the state has an interest in getting this case, if it is reversed, back to trial sooner than later or delay it for another year or two? If we were to reverse this case. It's in the interim. Why would you argue that we shouldn't consider the issue if trying the case eventually, if it is reversed, is important for the state's interest? If I were to give the response I want to give, it's sort of a form over substance answer. But I believe there is some merit to form. I believe there is some merit to form because this is what happens when, well, I guess the question that comes up is when this case came up on the first appeal. And we were arguing it. And this court had access to the record. And all of this was out there. None of this came out at that point with the court. I beg to differ with you. In the Rule 23 order, which I authored, we pointed out that there were jury questions. Jury questions? Jury questions. We did not address this issue. Then why didn't you remand it? But don't ask me that question. You just said that we didn't say anything. We did. We alerted the parties to it in our Rule 23 order. It's not our job to ferret out the issues. This issue has not been raised. And you think we should deem it forfeited and consider only the cranky issues. That's your position. I believe that if it – and I apologize, I don't recall that part of it. I was focusing on the direct order, the mandate. Then I would argue that the better way for it to have come up was then to have argued some deficiency with Mr. – with the Crankle counsel and how he presented the issues to the court. I still maintain that there should not be just an ad hoc way of issues being raised before a court. Can you summarize your position? The state believes that this issue has been forfeited. And even if this court does not – it wants to proceed on a plain error basis before it, we believe this is not structural error. We believe that the court below gave the answer that he was allowed to give without defining and overstepping his bounds by giving some sort of definition of reasonable doubt. And even to the extent of saying, no, you may not quantify it. Because the minute he would have said that, and even Mr. Kirkham said that, the minute he would have said that, he would have been setting up a definition. And for that reason, we ask you to affirm the ruling below. Thank you. Mr. Kirkham? Your Honor, your Honor, I just have a couple of questions. I'll be happy to answer as many as you have. Just as fast? Yeah. Thank you, Mr. Kirkham. And thank you, counsel, for your arguments. We will take the matter under advisement. A decision will be made in due course, and we will stand in recess to prepare for the next case.